IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JANET M. WEST,<br><br>       Plaintiff<br><br>   VS.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>       Defendant | NO. 5:02-CV-305 (CWH)<br><br>**SOCIAL SECURITY APPEAL**<br><br>BEFORE THE U. S. MAGISTRATE JUDGE |

**O R D E R**

    This is a review of a final decision of the Commissioner of Social Security denying the plaintiff's claim for Supplemental Security Income. All administrative remedies have been exhausted and the matter is ripe for review. Jurisdiction in this court arises under §§ 205(g), 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3). All parties have heretofore consented for this matter to be determined by the United States Magistrate Judge. The decision under review is the final decision of the Commissioner which, in this case, is that of the Administrative Law Judge issued on May 3, 2006.

**HISTORY**

    Plaintiff JANET M. WEST filed her current application for Disability Insurance Benefits on March 1, 2000. The application was denied by a Social Security Determination dated May 19, 2000. A subsequent request for reconsideration was denied on September 20, 2000. Thereafter, on November 13, 2000, plaintiff filed a Request for Hearing by Administrative Law Judge. The matter came on for hearing on April 4, 2001, at which time plaintiff presented both testimonial and documentary evidence concerning her physical and mental disabilities. On December 23, 2001, the Administrative Law Judge denied plaintiff's claim. Plaintiff next filed a Request for Review of Hearing Decision on February 26, 2002, followed by a supplemental brief on April 26, 2002. The Appeals Council declined to consider plaintiff's application in an order dated June 27, 2002. On August 26, 2002, plaintiff filed the instant action.

Thereafter, on May 29, 2003, the matter was remanded to the Commissioner pursuant to Sentence Six of 42 USC § 405(g) based upon the Commissioner's admitted inability to locate and produce some parts of the record. Upon remand, the Appeals Council sent the matter back to the Administrative Law Judge for a new hearing. Hearings on this matter were held before an ALJ on October 12, 2005 and April 11, 2006. On May 3, 2006, the ALJ denied plaintiff's claim. On August 21, 2007, the Appeals Council issued an order declining the plaintiff's request for review of the decision. Thereafter, and upon a request filed by defendant Commissioner Astrue, the instant case was reopened in this court on April 11, 2008. Both parties have filed briefs in support of their respective positions, and the court is now in possession of the complete administrative record.

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. **Walker v. Bowen**, 826 F.2d 996 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. **Richardson v. Perales**, 402 U.S. 389, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971).

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner.[1] **Bloodsworth v. Heckler**, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must, however, decide if the Commissioner applied the proper standards in reaching a decision**. Harrell v. Harris**, 610 F.2d 355, 359 (5th Cir. 1980). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. **Bloodsworth**, *supra*, at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id*.

---

[1]Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). *See also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

The initial burden of establishing disability is on the claimant. ***Kirkland v. Weinberger***, 480 F.2d 46 (5th Cir. 1973). However, the claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. ***Oldham v. Schweiker***, 660 F.2d 1078 (5th Cir. 1981).

A claimant seeking Social Security disability benefits must demonstrate that he suffers from an impairment that prevents him from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. §§ 404.1 *et seq*.

Under the regulations, the Commissioner determines if a claimant is disabled by a five step procedure. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Next, the Commissioner determines whether the claimant's impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevents the performance of any other work.

In arriving at a decision, the Commissioner must consider the combined effect of all the alleged impairments, without regard to whether each impairment, if considered separately, would be disabling. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). The Commissioner's failure to apply correct legal standards to the evidence presented is grounds for reversal. *Id*.

**DISCUSSION**

In her Brief in Support of Complaint (Tab #19), plaintiff WEST focuses on two issues: First, she avers that "the ALJ failed to property incorporate her mental limitations into his formulation of her residual functional capacity and thereby failed to present the vocational expert with a complete hypothetical responsive to the case." Second, plaintiff complains that because of his marked bias against her, the ALJ failed to afford her a full and fair hearing. The undersigned will address each of these contentions separately and in turn.

### **FORMULATION OF RFC AND HYPOTHETICAL QUESTION**

In addressing this first issue, plaintiff avers that the ALJ erred by failing to pose to the testifying vocational expert a complete hypothetical question which incorporated all of her alleged mental impairments. To support this assertion, plaintiff WEST cites cases which resulted in remand because an ALJ knowingly refused to include impairments already found to be "severe" in the hypothetical posed to the vocational expert. Having done so, the plaintiff offers an early summary of her first argument by asserting that "this is one of those cases."

To support this conclusion, plaintiff WEST notes that in step two of his sequential evaluation of her alleged disability, the ALJ determined that her depression , personality disorder, and narcotic pain medication addiction disorder are all "severe" impairments. Moreover, plaintiff points out that at steps four and five of the sequential evaluation process, the ALJ determined that she would be limited to work at the light exertional level with no more than occasional overhead reaching, performing simple tasks only, and working in a sheltered environment where there will be help setting and reaching goals and with only limited public contact. Plaintiff also refers to a subsequent observation by the ALJ wherein it was opined that the plaintiff would have moderate difficulties in social functioning and maintaining concentration, persistence, and pace, and mild restrictions in the activities of daily living. For these reasons, she concludes that "at every turn, the ALJ both acknowledged and evaluated [her] mental impairments as provided for under the regulations." Having highlighted the fact that the ALJ properly acknowledged and evaluated her mental impairments during his sequential evaluation of her alleged disability, plaintiff next claims that the ALJ's erred by failing to account for all of these limitations in his hypotheticals to the vocational expert.

To illustrate her claim that the ALJ's examination of the vocational expert was defective, plaintiff WEST cites portions of the hearing transcript wherein the ALJ is questioning the vocational expert. The following is an excerpt from the transcript which includes that exchange:

BY ADMINISTRATIVE LAW JUDGE

Q   An individual who's 47 years old, has a ninth grade education and work experience identical to that of Ms. West. In hypothetical number one I would like you to assume that this individual can do the full range of light work with the following limitations. This individual can do no more than occasional overhead reaching. That person can perform only simple tasks and the individual can have no more than limited public contact. Do you have all that?

A   Yes, sir, I do.

Q   Given these assumptions I assume you would say that an individual cannot do any of Ms. West's past relevant work?

A   Yes, sir, that work would be precluded.

Q   Given the same assumptions could such an individual perform any other work that exists in the national economy?

A   Yes, sir, there are jobs that exist within the limitations of this RFC.

Q   Go ahead, please.

A   All right. Some examples would be a production assembler. This is DOT number 706687010. It is classified as light and unskilled work with an SVP of 2. 11,000 of these jobs exist regionally, regionally covering the state of Georgia, 350,000 or more exist on a national basis. A second example would be a garment sorter. This is DOT number 222687014. It is light and unskilled work with an SVP of 2. 2500 of these jobs exist on a regional basis, 429,000 exist on a national basis. A third example would be a garment folder. This is DOT number 789687066. It is classified as a light and unskilled work with an SVP of 2. Currently there are 1200 of these jobs existing regionally, 30,000 or more existing nationally.

Q   Now in the second hypothetical I'd like you to assume all the same limitations as in hypothetical number one, but in addition I would like to add the requirement that this individual would need to work in a structured environment where there would be help setting and reaching goals. Of course a structured environment is different from a sheltered environment. Do you have that?

A   Yes, sir.

Q   How, if at all, does that change your response to hypothetical number one?

| | | |
|---|---|---|
| A | | If this is not a sheltered environment and it is an unskilled type environment, you are given and provided instructions by your supervisor. You are followed, your work performance is followed through and performance evaluations are done which cover job goals. |
| Q | | All right, So you're saying there's no change then to your answer to hypothetical number one? |
| A | | That's right. |

Record (pp 537-539)

In light of this line of questioning by the ALJ and the vocational expert's responses thereto, the plaintiff posits that either the ALJ's addition of the structured environment limitation was meaningless or that the ALJ improperly prompted the answer for which he was looking. Furthermore, plaintiff West avers that because the limitation of a structured work environment which was added by the ALJ's in his second hypothetical did not alter the vocational expert's opinion and/or response to the ALJ's first hypothetical, her moderate difficulties in social functioning, maintaining concentration, persistence, and pace about which the ALJ had earlier opined were not meaningfully accounted for or included in the ALJ's hypotheticals.[2]

---

[2] As noted above, plaintiff's counsel argues that because the structured work environment limitation added by the ALJ in his second hypothetical question did not result in any change in the vocational expert's earlier response, it must mean that his client's difficulties in social functioning, maintaining concentration, persistence, and pace were not meaningfully accounted for in the ALJ's hypothetical inquiry. Such an argument can be interpreted in at least two ways. On one hand, if the argument is that the inclusion of a limitation in addition to those already set out in an earlier hypothetical necessarily requires a change in a vocational expert's earlier response about the availability of appropriate existing jobs, the argument is both shortsighted and illogical. This is because the vocational expert's earlier response could easily have included examples of jobs which would accommodate the limitations set out in the initial hypothetical as well as the subsequently added limitation(s). Moreover, absent a system where a vocational expert's testimony about existing jobs is strictly limited to identifying work which would accommodate only those limitations set out in the initial hypothetical to the exclusion of all others, any conclusion that the mere addition of a different (however closely related) limitation should automatically result in a different response by the vocational expert is simply unsound. If, on the other hand, the plaintiff's argument is that the vocational expert's decision not to change his response proves that the ALJ failed to adequately incorporate the plaintiff's aforementioned functional limitations into his hypothetical through the addition of a structured environment limitation, the argument would not be illogical but it would still be myopic. This is because such an argument fails to take into account the likelihood that other (and in this case related) limitations contained in the ALJ's first hypothetical could have adequately incorporated the particular mental limitations about which the plaintiff complains. Here, the initial hypothetical included, *inter alia*, limitations that the work include only simple tasks and limited contact with the public. With that in mind, it is certainly not unreasonable to conclude that jobs which involve limited contact with the public and which require only the performance of simple tasks would, by their nature, accommodate some if not all of the limitations which plaintiff complains were not included. In any event, even if the undersigned were to accept that the ALJ's use of a structured environment limitation did not, by itself, sufficiently incorporate the plaintiff's difficulties in social functioning, maintaining concentration, persistence, and pace into the hypothetical, such a conclusion would not be dispositive of the issue. Contrary to the plaintiff's apparent belief, when reviewing whether or not a hypothetical has properly and completely incorporated all of a claimant's limitations, the court must consider all of the limitations set forth in the hypothetical collectively. Having done so, the undersigned is convinced that the ALJ's use of a structured environment limitation, together with the simple task and limited public contact limitations, adequately incorporates all of the plaintiff's mental limitations. Accordingly, the vocational expert's testimony in response thereto constitutes substantial evidence.

To validate this conclusion, plaintiff refers to her counsel's questioning of the vocational expert which followed that of the ALJ. During this line of questioning, plaintiff's counsel posed a series of hypotheticals using as a basis the limitations set out by the ALJ in his first hypothetical. In doing so, plaintiff's counsel asked the vocational expert three additional hypothetical questions. Each question included the limitations posed by the ALJ in his first hypothetical plus one additional limitation. That is, the additional limitations submitted by plaintiff's counsel were individually tested in a separate and non-cumulative fashion. The additional limitations included (1) an assumption that the hypothetical claimant has "no useful ability to have the ability to make judgments on simple work related decisions," (2) an assumption that the hypothetical claimant has "no useful ability to respond appropriately to work pressures in a usual work setting," and (3) an assumption that the hypothetical claimant has "no useful ability to respond appropriately to changes in a routine work setting."

With regard to each of the three sets of limitations set forth above, plaintiff's counsel inquired as to whether a claimant with such limitations would be able to work in the jobs that the vocational expert had previously listed in response to the ALJ's hypotheticals. In each instance the answer was no. In addition, plaintiff's counsel inquired as to whether other jobs in any degree of exertion would be available to a claimant with such limitations. Again, the answer was no. As such, plaintiff concludes that the Commissioner's decision should be reversed and benefits awarded.

Having carefully reviewed the above arguments, as well as the record in this case, the undersigned must disagree with the plaintiff's conclusion on this argument. As plaintiff West has pointed out, in order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Wilson v. Barnhard,* 284 F.3d 1219, 1227 (11th Cir. 2002). Since the plaintiff concedes that the ALJ did indeed "acknowledge and evaluate [her] mental impairments as provided for under the regulations," the only remaining issue is whether or not the particular language employed by the ALJ in his hypotheticals properly incorporated these mental limitations.[3]

---

[3]Note that since the petitioner does not contest the ALJ's incorporation of her exertional limitations into the hypothetical the analysis will be limited to a discussion of whether or not the hypotheticals adequately included petitioner's mental limitations.

As was previously noted, at step two of his sequential evaluation, the ALJ found that the plaintiff's mental impairments included depression, a personality disorder, and a narcotic pain medication addiction disorder. At steps four and five of his sequential analysis, and apparently in light of these impairments, the ALJ concluded that a person with these impairments would require a job in a sheltered environment where help setting and reaching goals would be available. In addition, the job would also need to involve only limited public contact and the performance of only simple tasks. Later in his decision, the ALJ opined that because of her mental impairments, plaintiff West would likely have moderate difficulties in social functioning, maintaining concentration, persistence, and pace, and would suffer mild restrictions in the activities of daily living.

In view of the above, and as is evidenced by the excerpts taken from the hearing transcript and reproduced herein, the language used by the ALJ to incorporate the plaintiff's mental limitations into his hypothetical questions to the vocational expert explicitly included limited public contact, a structured environment where there would be help setting and reaching goals, and the performance of only simple tasks. Accordingly, and in light of the ALJ's use of this language, the Commissioner avers that the ALJ's hypothetical questions adequately incorporated each and every one of the plaintiff's mental limitations and, as such, were complete. The undersigned agrees. Despite the fact that the plaintiff would obviously have preferred the ALJ to use much more restrictive and emphatic language, in the view of the undersigned, no such language was necessary.[4] Consequently, the undersigned conclude that the ALJ's hypothetical were sufficient and that the vocational expert's responses thereto constitute substantial evidence. Plaintiff West's arguments to the contrary are without merit.

---

[4]Moreover, the undersigned observes that the inexplicably severe limitations described by and included in the hypothetical questions to the vocational expert proffered by plaintiff's counsel are simply not supported by the record.

**IMPROPER BIAS OF THE ALJ**

The second issue raised by plaintiff WEST is her averment that, because of his marked bias against her, the ALJ failed to afford her a full and fair hearing. In support of this argument, the plaintiff cites to certain comments in the ALJ's decision which are critical of the plaintiff's credibility and her and her family's personal lives. In light of these comments, plaintiff concludes that she could not have been, nor was she, afforded a full and fair hearing.

In response to this argument, the Commissioner avers that even though the ALJ made certain unnecessary critical remarks, he fairly evaluated the evidence in concluding that the plaintiff was not disabled. In support of this averment, the Commissioner notes that a presumption of honesty and integrity exists in those who serve as adjudicators for administrative agencies. *Schweiker v. McClure*, 456 U.S. 188, 195-196 (1982); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). The Commissioner goes on to point out that the burden of overcoming this presumption rests upon the party making the assertion of bias and that, in meeting this burden, the party must rebut the presumption by showing a conflict of interest or some other specific reason for disqualification. *McClure*, 456 U.S. at 195-196. Furthermore, in order for the presumption to be overcome, the party must come forward with convincing evidence that "a risk of actual bias or prejudgment" is present. *Id.* Finally, for the alleged bias to be disqualifying, it must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966). In light of these requirements, and in consideration of the arguments set forth by the plaintiff, the Commissioner concludes that the plaintiff has failed to show disqualifying bias on the part of the ALJ or that her hearing was anything but full and fair. The undersigned agrees.

Having carefully read and considered the plaintiff's arguments, as well as the relevant portions of the record, it appears to the undersigned that the plaintiff may be grasping at straws. This observation is based upon plaintiff's own statement that "this is a borderline case where Plaintiff may or may not ultimately be entitled to benefits based on the record as presented." In any event, and with respect to the instant claim, plaintiff's attempts to demonstrate disqualifying bias are not sufficient to meet the standards set forth above. For this reason, the court finds this argument to be without merit.

## CONCLUSION

For the reasons set forth above, the final decision of the Commissioner now under review is **AFFIRMED**. Let judgment enter accordingly.

**SO ORDERED** this 1st day of MAY, 2009.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE